The Law Offices of Avrum J. Rosen, PLLC
Proposed Attorneys for the Debtor
38 New Street
Huntington, New York 11743
Avrum J. Rosen
Fred S. Kantrow

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

                                            Chapter 11

     WATER STREET REALTY GROUP, LLC,     Case No.: 09-10832

                        Debtor          Hon. James M. Peck

---------------------------------------------------------------x

**APPLICATION IN SUPPORT OF ORDER TO SHOW CAUSE UNDER §§ 105, 361 AND
363 OF TITLE 11 OF THE UNITED STATES CODE SEEKING AUTHORIZATION
FOR THE DEBTOR-IN-POSSESSION TO UTILIZE THE CASH COLLATERAL OF
THE LENDERS SET FORTH IN THIS APPLICATION
_NUNC PRO TUNC_ TO THE DATE OF SUBMISSION**

TO:    The Honorable James M. Peck
       United States Bankruptcy Judge

       The application of Water Street Realty Group, LLC, the debtor-in-possession ("Debtor"

and/or "Applicant"), by its proposed attorneys, The Law Offices of Avrum J. Rosen, PLLC, by

way of Order to Show Cause, seeking an Interim Order Authorizing the Debtor to utilize cash

collateral pursuant to Sections 105, 361 and 363 of Title 11 of the United States Code ("the

Bankruptcy Code") respectfully represents and states as follows:

BACKGROUND INFORMATION

1.      On February 24, 2009, (the "Petition Date") Applicant filed a voluntary Petition seeking

      relief from its creditors pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Sec.

      101    et. seq.  Applicant has continued to remain in possession, custody and control of

the business and its property pursuant to Sections 1107 and 1108 of the Bankruptcy Code.[1]

2.      No trustee, examiner or Official Committee of Unsecured Creditors has been appointed herein.

3.      The Debtor is a corporation, formed on June 2, 2005, and existing under the laws of the State of New York.

4.      The Debtor's principal location is its offices located at 848 Faile Street, Bronx, New York 10457.

5.      The Debtor's assets consist of the real property located at 133 Water Street, Brooklyn, New York (the "Water Street Property") as well as all of the rents associated with the said real property. The real property has an approximate value of $20,000,000.00. The Debtor's total liabilities at this point total approximately $35,000,000.00.

6.      The Water Street Property is comprised of a total of 52 residential condominium units and one commercial condominium use unit.

7.      Prior to the instant filing, the Debtor granted three separate mortgages to three separate pre-petition secured lenders (the "Lenders"). The Lenders are comprised of General Electric Capital Corporation ("GECC"); Broadway Bank ("Broadway") and Northern Funding ("Northern"). A copy of the GECC loan documents are annexed to a copy of this motion provided to the Court and to the Office of the United States Trustee, as Exhibit

---

[1] Prior to the instant filing, General Electric Capital Corp. ("GECC") a prepetition secured lender, commenced a foreclosure action in the New York State Supreme Court. In conjunction with its foreclosure action, GECC sought and obtained an Order appointing a receiver. While a receiver was appointed, the receiver did not qualify prior to the commencement of the chapter 11 proceeding.

"A". A copy of the Broadway loan documents are annexed to a copy of this motion provided to the Court and to the Office of the United States Trustee, as Exhibit "B".[2]

8. Prior to the Petition Date, pursuant to that certain mortgage loan agreement dated as of July 25, 2007, between the Debtor and GECC (the "GECC Loan Agreement"), GECC made a mortgage loan to the Debtor (the "GECC Mortgage Loan"). The GECC Mortgage Loan is evidenced by a promissory note in the original principal amount of $22,350,000.00. The GECC Mortgage Loan is secured by an interest in 44 residential condominium units as well as the one commercial condominium unit at the Water Street Property.[3]

9. As of the Petition Date, GECC claims that the Debtor was indebted to GECC in the total amount of $22,350,000.00 plus accrued interest and escrow advances..

10. Prior to the Petition Date, pursuant to that certain mortgage loan agreement dated as of April 1, 2008, between the Debtor and Broadway (the "Broadway Loan Agreement" and when referred to with the GECC Loan Agreement, the "Loan Agreements"), Broadway made a mortgage loan to the Debtor (the "Broadway Mortgage Loan"). The Mortgage Loan is evidenced by a promissory note in the original principal amount of $8,000,000.00. The Mortgage Loan is secured by an interest in the remaining eight (8) residential condominium units and a subordinate mortgage the units securing the GECC Loan at the Water Street Property.

---

[2] Other parties interested in obtaining a copy of the loan documents for either GECC or Broadway, or both, should contact the Debtor's proposed counsel and request a copy.

[3] The Debtor reserves all of its rights to challenge or otherwise object to the validity and perfection of GECC's alleged secured position.

11. As of the Petition Date, Broadway claims that the Debtor was indebted to Broadway in the total amount of $8,243,736.92, consisting of unpaid principal in the amount of $7,984,666.58, $167,692.93 in unpaid interest, late charges of $26,050.54, and $65,126.77 in returned checks.

12. Northern is in a subordinate position to both GECC and Broadway and it is the Debtor's position that Northern is completely unsecured.

13. The Debtor's present problems arose as a result of GECC calling a non-monetary default alleging that the Debtor granted a mortgage to another lending institution and that mortgage became subordinate to GECC's mortgage. A copy of the GECC default letter is annexed hereto as Exhibit "C". Prior to the alleged non-monetary default, there were no payment defaults by the Debtor to GECC.

14. The Debtor has requested the use of the Lenders' Pre-Petition Collateral on an interim basis up to and including May 22, 2009 without prejudice to the Debtor to seek an extension of time, subject to a final hearing (the "Final Hearing")

15. Currently, the Debtor has received checks from its customers which shall be deposited in the Debtor's debtor-in-possession operating account (the "DIP" account") which have been established at HSBC Bank, a banking institution which is an authorized depository pursuant to the guidelines established by the Office of the United States Trustee for this region.

16. Consideration of this Application constitutes a "core proceeding" as defined in 28 U.S.C. Section 157(b)(2)(A), (K), (M), and (O).

17. This Court has jurisdiction over this proceeding, the parties and property affected hereby pursuant to 28 U.S.C. Sections 157 and 1334.

18.    No committee, trustee or examiner has been appointed to date in this case.

Negotiations with General Electric Capital Corporation

19.    Prior to moving before this Court for the entry of an order authorizing the Debtor's use of cash collateral, the Debtor sought to enter into a consensual order with both GECC and Broadway.

20.    Broadway, through its counsel, expressed its desire to enter into a consensual cash collateral order. GECC, through its counsel, originally expressed an interest in reaching a consensual cash collateral order. However, the Debtor has been unable to come an agreement with GECC

21.    The Debtor has come to an agreement with Broadway which agreement is set forth in the proposed order.

## THE DEBTOR'S NEED FOR CASH COLLATERAL

22.    The Debtor is without the necessary cash to operate, thus without the necessary cash to make monthly mortgage payments; pay for the daily business operations; provide for maintenance and upkeep of the building and pay its employees. Thus, the Debtor will not be able to service its debt or ensure the safety of the tenants residing in the building. Included in the Debtor's need for use of cash collateral is the ability to pay the required utility bills and deposits required pursuant to section 366 of the Bankruptcy Code, in connection with the Water Street Property. Without the ability to use cash collateral, the Debtor will be unable to pay Consolidated Edison, and it runs the substantial risk of the termination of the utilities.

23.    Under the circumstances, and consistent with the need to use cash collateral, the Debtor asserts that good cause is shown which provides the basis to authorize the use of cash

collateral. The Debtor's use of cash collateral will (1) minimize disruption of the Debtor's business and operations; (ii) permit the Debtor to meet payroll and other operating costs and expenses and otherwise maintain the real property; and (iii) be in the best interests of the Debtor, its creditors and other parties in interest and (iv) aid efforts towards reorganization. In order to avoid immediate and irreparable harm to the Debtor pending a Final Hearing, and the concomitant harm to the Debtor's employees, its creditors and the estate in general, the Debtor requests the use of cash collateral on the terms and conditions set forth in this application and in accordance with the attached budget (the "Budget"). The Debtor's continued operations, which shall be made possible by the use of the cash collateral requested, will also preserve the value of the cash collateral itself.

24.     Section 363(c) authorizes the Court to allow the Debtor to use cash collateral. The Debtor is requesting permission to utilize cash collateral to meet its payroll expenses, its mortgage expenses, maintain the building, insurance and the other costs associated with the daily operations of the Debtor.

25.     Annexed to this Application and the Order is the Debtor's proposed monthly budget. The Debtor is requesting the use of cash collateral pending the hearing on this matter on a *pro-rata* basis based upon the budget.[4] It is respectfully requested that the preliminary hearing on this matter be held as soon as is practicable. A copy of the proposed Budget is annexed hereto as Exhibit "D".

## THE TERMS OF THE PROPOSED USE OF CASH COLLATERAL

---

[4] Except for the deposits required pursuant to section 366 of the Bankruptcy Code which are included in the interim relif.

26.    The Debtor seeks to use the Lender's cash collateral (the rents received (the "Rents")), solely in accordance with and to the extent set forth in the interim order (the "Interim Order") entered by the Court, and further pursuant to the Budget annexed hereto on an interim basis in an aggregate amount not to exceed $471,200.00 through and until 5:00 p.m. (prevailing Eastern Time) on May 22, 2009 (the "Expiration Date").

27.    The Debtor shall not seek to use the Lender's cash collateral to make any payments to any affiliates, except that the Debtor proposes to pay a fee of three (3) percent to the Debtor's management company.  This proposed three (3) percent fee is believed to be a below market amount and represents a savings to the Debtor should it otherwise have to hire an outside management company to provide such management services.[5]

28.    The Debtor seeks to retain the sums it has already received from its tenants, which sums are held in the Debtor's DIP account in the approximate amount of $.  The Debtor seeks authorization to collect all rents and all other cash receipts, including license fees generated from the Water Street Property.  The Debtor further seeks authorization for all tenants to make such rent payments to the Debtor.

29.    The Debtor seeks to prohibit the Lenders from setting off, recouping, or otherwise restraining any funds contained in any DIP account maintained at any financial institution, including, but not limited to DIP funds held in HSBC Bank, without first moving before the Court for an order terminating, annulling or otherwise modifying the provisions of section 362 of the Bankruptcy Code, upon written notice to the Debtor.

---

[5] At this time, the Debtor's management company has agreed to waive the management fees.  However, the Debtor reserves the right, and the management company reserves its right, to pay and to seek payment of the management fees at a later date.

30. The Debtor shall agree to provide the Lenders with a written rent roll and the names of the tenants in each unit which is rented on or before March 26, 2009.

31. The Debtor seeks authorization pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, to provide adequate protection for any diminution occurring subsequent to February 24, 2009, in the value of the Lenders' interests in the pre-petition collateral, including without limitation such diminution as may be caused by the imposition of the automatic stay of the Bankruptcy Code and section 362(a) and by the Debtor's use of the pre-petition collateral and or cash collateral,

32. The Debtor seeks authorization to grant the Lenders a post-petition claim (the "Adequate Protection Claim") together with the pre-petition obligations (the "Obligations") jointly and severally against the Debtor's estate.

33. The Debtor seeks authorization pursuant to section 361 and 363(e) of the Bankruptcy Code, as security for the Adequate Protection Claim, to grant to the Lenders for ratable benefit of each Lender, a valid, binding, enforceable and automatically perfected lien, mortgage and/or security interest (collectively, the "Replacement Liens", and as so granted to the Lenders the "Adequate Protection Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, including post-petition rents, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, to the extent acquired after the Petition Date, the "Post-Petition Collateral" and together with the Pre-Petition Collateral and the Cash Collateral, the "Collateral").

34.     The Debtor seeks authorization to provide that the Adequate Protection Lien shall be subject to liens and other interests in the property of the Debtor's estate existing as of the Petition Date that are (i) valid, enforceable and not subject to avoidance by any trustee under the Bankruptcy Code; and (ii) senior under applicable non-bankruptcy law to, encumber assets not encumbered by the Lenders' lien in the Pre-Petition Collateral as of the Petition Date.

35.     The Debtor proposes that in the event that an Official Committee of Unsecured Creditors (the "Committee") is appointed under section 1102 of the Bankruptcy Code, it shall have a minimum of sixty (60) days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of any order approving the appointment of counsel for the Committee to investigate the facts and bring any appropriate proceeding with regard to the Debtor's stipulation (if any, and at all) to the validity, perfection, enforceability, priority and non-avoidability of any Lenders' claim and liens, and the lack of any defense thereto.

36.     The Debtor proposes that in the event that no Committee is appointed in this case, then any party in interest shall have a minimum of seventy-five (75) days (or a longer period for cause shown before the expiration of such period) from the entry of any Final Order approving the Debtor's use of cash collateral, to investigate and file a motion seeking authority to bring any appropriate proceedings as representative of the estate.

37.     The Debtor seeks a determination that in the event that no adversary proceeding or stipulation extending the time to commence an adversary proceeding challenging the perfection, extent or validity of the Lenders' pre-filing date liens are timely commenced as

set forth herein, then such liens and/or mortgages shall be deemed valid and perfected mortgages.

38.    The Debtor seeks a modification of the automatic stay provisions of section 362 to the extent necessary to permit (a) the Debtor to implement and perform the terms of any Interim Order; and (b) the Debtor to create, and the Lenders to perfect, the Adequate Protection Lien an other Liens granted in any Interim Order.  The Debtor seeks authorization to provide that the Lenders shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect the Liens granted under any Interim Order or to take any other actions to perfect such Liens, which Liens shall be automatically perfected by the docketing of any Interim Order by the Clerk of the Court, at the time of the commencement of the Debtor's bankruptcy case on the Petition Date.  However, should the Lenders elect for any reason to file, record or serve any such financing statements or other documents with respect to such Liens, then the Debtor shall execute same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of the chapter 11 case on the Petition Date.

39.    The Debtor seeks authorization to allow that the Adequate Protection Lien shall not be subject to any Lien which is avoided and which would otherwise be preserved for the benefit of the Debtor's estate under section 521 and the Adequate Protection Lien shall encumber and constitute a prior Lien which is avoided and which would otherwise be so preserved for the benefit of the Debtor's estate.  The Lenders shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Collateral

40.     The Debtor shall not seek the entry of any further orders in this chapter 11 case which would authorize the Debtor (a) under section 363, to use the Cash Collateral in which the Lenders have an interest, or the sale, use or lease, other than in the ordinary course of business, of property of the Debtor in which the Lenders have an interest; or (b) the obtaining of credit or the incurring of indebtedness pursuant to section 364(c) or 364(d) unless such credit shall be used to repay the obligations to the extent they are determined to be secured in full, or in part, the extent of said lien, or any other grant of rights against the Debtor and/or its estate, secured by a Lien in the Collateral or entitled to priority administrative status which equal or superior to that respectively granted to the Adequate Protection Claim or the Adequate Protection Lien.

41.     The Debtor shall be in default of any Interim Order based upon the following which shall be considered an "Event of Default": (a) the Debtor ceases its operations or takes any material action for the purpose of effecting the foregoing without the prior written consent of the Lenders, except to the extent contemplated by the Budget; (b) the Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially and adversely affect the rights of the Lenders hereunder or shall materially and adversely affect the priority of any or all of the Obligations and the Lenders' Liens; (c) the Debtor expends more than 110% of any line item in the Budget; (d) the occurrence of a material adverse change subsequent to the Petition Date, including, without limitation, any such occurrence resulting from the entry of an order of this Court the effect of which has not been stayed, in each case as reasonably determined by the Lenders, in (1) the condition (financial or otherwise), operations, assets, business of the Debtor taken as a whole and with due regard to the Debtor's underlying business plan as

evidenced by the Budget as the same be amended from time to time either with consent of the Lenders or by order of this Court, and/or (2) the value of the Collateral; (e) any material and/or intentional misrepresentation by the Debtor in the financial reporting or certifications to be provided by the Debtor to the Lenders under the loan documents an/or any Interim Order; and (f) non compliance or default by the Debtor with any of the terms, provisions and conditions of any Interim Order, *provided*, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within five (5) business days after notice of such non-compliance or default is provided to the Debtor's counsel, in writing, to The Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743, by the Lenders.

42.    The Debtor shall undertake to continue to keep the Lender's Collateral fully insured against all loss, peril and hazard and make the Lenders, for the ratable benefit of the Lenders, the additional insured in any such insurance policy maintained by the Debtor as to the Collateral.  The Debtor shall timely pay any and all undisputed post-petition taxes, assessments and governmental charges with respect to the Collateral as provided for under the Loan Documents or as is required under the Administrative Code of the City of New York.  The Debtor shall provide the Lenders with proof of insurance within five (5) business days of written demand and will give the Lenders reasonable access to its records in this regard.

43.    The Debtor shall provide the Lenders, upon five (5) business day's written notice, at any time during the Debtor's normal business hours, the right to inspect, audit, examine, check, make copies of or extract from the books and records of the Debtor, and monitor

the Collateral, and the Debtor shall make all of the same reasonably available to the Lenders and their representatives, for such purposes.

44. The Debtor agrees that for the purposes of an Interim order, the term "Proceeds" shall mean any and all payments, proceeds or other consideration realized upon the sale, liquidation, collection of rents in connection with the Collateral, whether in the ordinary course of the Debtor's business or other than in the ordinary course of the Debtor's business.

45. The Debtor agrees that from the entry of any Interim Order and pending a Final Hearing and/or entry of any subsequent orders, the Post-Petition Indebtedness, if incurred, shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate except for those operating expenses (including the statutorily required fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 and any interest due thereon, as well as the costs and expenses of any chapter 7 trustee) that are set forth in the Budget or with the written consent of the Lenders and professional fees approved by the Court, or pursuant to a monthly compensation order, however, the Post-Petition Indebtedness shall be subject to a "Carveout" under the conditions contained in the Interim Order.

The Carveout

46. The Carveout shall include (i) the payment of fees pursuant to 28 U.S.C. § 1930 and any interest due thereon, to the Office of the United States Trustee; (ii) any amounts allowed by the Court as fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $5,000; and (iii) prior to the occurrence of an Event of Default (as described herein) the actual amount of Court allowed professional

fees and expenses of attorneys, accountants, financial advisors and consultants retained by the Debtor, any statutory committee appointed in the case, subject to the maximum amount set forth in the Budget; and (iv) in the event of a Termination Event, the payment of unpaid Court allowed professional fees and expenses (whether incurred prior to or following the Termination Event) of attorneys, accountants, financial advisors and consultants retained by the Debtor or any statutory committee appointed in the case, in an aggregate amount of $100,000.00 (the "Cap"), *provided*, that any Court allowed professional fees incurred and paid prior to the Termination Event shall not apply to or otherwise reduce the Cap.

### THE PROPOSED PAYMENTS TO GENERAL ELECTRIC CAPITAL CORPORATION

47. Pursuant to section 361 of the Bankruptcy Code, GECC may be entitled to adequate protection payments. Accordingly, the Debtor proposes to pay GECC interest only payments, commencing on April 1, 2009, at the non-default contract rate, to the extent that GECC has a security interest in the Water Street Property.

48. Based upon the Debtor's valuation of the Water Street Property, the property has a value of $20,000,000.00. As GECC is secured to the extent that it has an interest in 44 units, the Debtor believes that its security interest is value at $17,000.000.00. For the purposes of the Debtor's use of cash collateral, the Debtor proposes to pay the non-default interest only payments based upon the $17,000,000.00 value or a monthly payment in the amount of $75,000.00.

49.     In order for the Debtor's property, such as the rents received, to constitute cash collateral under section 363(a)[6], the property must also constitute property of the estate because, under section 363(c)(2), cash collateral includes only property in which the estate and another entity other than the estate have an interest.  Thus, the property or cash collateral sought to fund the Debtor's plan of reorganization must first be classified as property of the estate under section 541(a) of the Bankruptcy Code.

50.     Pursuant to section 363(p)(1), the Debtor has the burden of proof on the issue of adequate protection.  As the Debtor has proposed to pay GECC the interest it is entitled to pursuant to the non-default contract rate, and has further proposed to commit the rent revenues received from the Water Street Property in order to pay GECC as well as the upkeep and maintenance of the Water Street Property, the Debtor asserts that GECC is adequately protected.  The Debtor is also offering to grant post-petition replacement liens as ordinarily required pursuant to section 361(2).  GECC retains its rights to seek to terminate the automatic stay in the event that the Debtor experiences a change in financial circumstances.

51.     Further, the Debtor shall provide GECC with the right to inspect the Water Street Property upon reasonable request and shall further provide GECC with all of the Debtor's operating reports on a timely basis.

---

[6] Section 363(a) provides that cash collateral means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 522(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under the Bankruptcy Code.

52.     The Debtor believes that based upon the above, GECC would be provided with sufficient adequate protection that should enable the use of cash collateral.  The terms offered to GECC strike the necessary equitable balance between the rights of the creditor and the rights of the Debtor.

## THE PROPOSED PAYMENTS TO
## BROADWAY FUNDING

53.     Pursuant to section 361of the Bankruptcy Code, Broadway may be entitled to adequate protection payments.  Accordingly, the Debtor proposes to pay Broadway interest only payments, commencing on April 1, 2009, at the non-default contract rate.  The Debtor shall pay the sum of $35,000.00 per month.

54.     Broadway has agreed to accept such treatment.

## GENERAL PROVISIONS OF THE PROPOSED CASH COLLATERAL ORDER

55.     The Debtor proposes that the Interim Order would be binding upon and inure to the benefit of the Lenders, the Debtor and their respective successors and assigns, including, without any limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case under any Interim Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case, or any other person or entities, or any direct, indirect or incidental beneficiaries thereof.

56.     The Debtor proposes that notwithstanding any potential application of rules 6004(g), 7062, 9014 or otherwise of the Federal Rules of Bankruptcy Procedure, that the entry of any Interim Order be effective and immediately enforceable.  Any Interim Order may not be stayed absent (a) an application by a party in interest for such stay in conformance with

such Rule 8005 and (b) a hearing upon notice to the Office of the United States Trustee and the Lenders.

57.    The Debtor proposes that the provisions of any Interim order and any actions taken pursuant to the Interim Order shall survive entry of any orders which may be entered converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code.  The terms and provisions of any Interim Order, as well as the Adequate Protection Claim, the Adequate Protection Lien and all other claims and Liens granted by any Interim Order, shall (a) continue in this chapter 11 case or any superseding cases under the Bankruptcy Code; (b) be valid and binding on all parties in interest, including, without limitation, any Committee, chapter 11 trustee, examiner or chapter 7 trustee, and (c) continue, notwithstanding any dismissal of the Debtor's bankruptcy case, and such claims and Liens shall maintain their priority as provided for in the Interim Order until the obligations are satisfied in full.

58.    In the event that any terms in any Interim Order conflict with the provisions of the Loan Documents, the Interim Order shall be deemed to control and shall supersede the conflicting provision(s) in said agreements, *provided,* however, that nothing in any Interim Order shall amend, modify or supersede the provisions of the agreements which govern the rights and obligations of the Lenders as among themselves.  To the extent that any of the provisions of any Interim Order shall conflict with any Order of the Court authorizing the Debtor to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then the Interim Order shall be deemed to control and supersedes the conflicting provisions in the said orders.

59.     The Debtor proposes to provide notice of any hearing to consider the entry of an Interim

        Order on the Office of the United States Trustee, the twenty largest creditors, the Lenders'

        counsel and all parties filing a notice of appearance in the chapter 11 case (collectively,

        the "Notice Parties") by regular mail.

60.     No previous application for the relief sought herein has been made to this or any other

        Court.

        **WHEREFORE**, it is respectfully requested that the annexed Order to show

cause be entered, together with other and further relief as to this Court seems just and proper.

Dated: Huntington, New York
        March 11, 2009

                                        The Law Offices of Avrum J. Rosen, PLLC
                                        Proposed Counsel for Water Street Realty, LLC

                                        BY:     S/Avrum J. Rosen
                                                Avrum J. Rosen
                                                Fred S. Kantrow
                                                38 New Street
                                                Huntington, New York 11743
                                                631 423 8527
                                                ajrlaw@aol.com