**TARTER KRINSKY & DROGIN, LLP**
*Co-Counsel for Broadway Bank*
Scott S. Markowitz, Esq. (SSM 0849)
Philip A. Byler, Esq.
1350 Broadway, 11th Floor
New York, NY 10018
Tel: 212-216-8005
Fax: 212-216-8001

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                              Chapter 11

               WATER STREET REALTY GROUP, LLC,     Case No. 09-10832-jmp

               Debtor.
-----------------------------------------------------------------x

## BROADWAY BANK'S LIMITED OBJECTION TO DEBTOR'S MOTION TO USE CASH COLLATERAL

TO: THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE

Broadway Bank ("Broadway") by and through its counsel, Tarter Krinsky & Drogin LLP and Nesenoff & Miltenberg, respectfully submits the following limited objection (the "Objection") to Water Street Realty Group, LLC's (the "Debtor") motion to use cash collateral.

### PRELIMINARY STATEMENT

1. Broadway objects to the Debtor's motion to use its cash collateral because the budget annexed to the motion raises issues which require further amplification and explanation. Broadway also objects to the use of cash collateral to pay the Debtor's attorneys' fees or to pay

any insiders or affiliates of the Debtor. Provided Broadway is granted adequate protection as set forth below, it has no objection to the use of cash collateral solely to pay necessary operating expenses of the Property (as defined below).

2. The Property was developed as a condominium and consists of approximately 52 residential units and a commercial unit. Upon information and belief, the Debtor obtained approval of the condominium plan from the attorney general's office and intended to market and sell the units. Upon information and belief, due to the rapid decline in the housing market in the New York City Metropolitan area, the Debtor has elected to rent the units rather than sell the units.

3. On or about April 1, 2008, Broadway lent the Debtor $8,000,000.000 which loan was secured by a mortgage on the property located at 133 Water Street, Brooklyn, New York, New York (the "Property") subordinate only to the first mortgage of General Electric Capital Corporation ("GECC") in the principal amount of approximately $22,000,000.00.

4. On or about May 12, 2008, GECC voluntarily released eight (8) units from its mortgage. See Exhibit "A". As a result, Broadway holds the first mortgage on eight (8) units and a second on the remaining units. Broadway also holds an assignment of the rents and/or a security interest in the rents.

5. Broadway is owed the total sum of approximately $8,243,736.00 which consists of unpaid principal in the amount of $7,984,666.00, $167,692 in unpaid interest, late charges of $26,650.54 and $65,126.77 in returned checks.

6. The Debtor proposes to pay Broadway monthly adequate protection payments of $35,000.00. The Debtor proposes to pay GECC monthly adequate protection payments of

$75,000.00. Broadway's non-default principal and interest payments under the loan is $65,126.00. The contract interest rate is 9%.

7. The Debtor has failed to provide pertinent financial information to Broadway. For example, Broadway has not received a payment since December 2008. Upon information and belief, GECC has not received a payment since November or December 2008. According to the Debtor's budget attached to the motion, the gross rent collections per month amount to approximately $195,000 and the monthly expenses are approximately $39,000.00 exclusive of debt service. This leaves excess cash collateral of approximately $155,000.00. As such, the Debtor should have at least $450,000.00 in cash on hand from rent collections. Despite requests, the Debtor has not advised Broadway of its cash position.[1]

## BROADWAY'S LIMITED OBJECTION

8. In enacting the Bankruptcy Code, Congress recognized the unique nature of cash collateral as the form of collateral subject to the greatest risk of dissipation, and accordingly, granted to it special status in order to ensure that a secured creditor would not be deprived of its interest therein by the debtor's unauthorized use, and the resulting rapid dissipation thereof. See Sun Bank/Sun Coast v. Earth Lite, Inc. 9 B.R. 440, 443 (Bankr. M.D. Fla 1981); accord, In re The Cropper Co. Inc. 35 B.R. 625,633 (Bankr. M.D. Ga. 1983) (cash collateral requires special protection because it "is the most likely form of collateral to be consumed in the reorganization process [and] is subject to change on a daily basis").

9. The Debtor bears the burden of proving by "clear and convincing evidence" that its proposed use of cash collateral will provide for adequate protection of the secured creditor's

---

[1] Schedule B reflects cash on hand of only $13,000. The rule 2016(b) statement indicates Debtor's counsel received a $25,000 retainer from Glory Properties, LLC. The affidavit submitted in support of retention states that counsel received $17,500 post-petition from Seraphim Management Company. Further explanation of where the rents have gone is required.

{Client\002935\BANK143\00184204.DOC;1}

3

interest. See, In re O.P. Held, Inc. 74 B.R. 777, 784 (Bankr. N.D. N.Y. 1987); In re Leavell, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985).

10. The Debtor asserts that the Property has a value of $20,000,000.00[2]. Based upon this valuation, the Debtor seeks to reduce the monthly payments to Broadway from $65,000 to $35,000. However, the Debtor's own budget reflects significant excess cash flow. There is no reason the Debtor should retain these funds especially in view of the Debtor's apparent use of the rents for expenses not related to the Property. Rather, they should be paid to the mortgage holders.

11. The real estate market continues to be in decline and there is no indication that it will not continue to decline. In United Savs Association v. Timbers of Inwood Forest Associates, 484 U.S. 365, 372 (1988), the Supreme Court recognized that the phrase "the value of such entity's interest in such property" utilized in subsections (1) and (2) of Section 361 of the Bankruptcy Code requires more than the adequate protection of the value of the secured creditor's claim: it is the value of the secured creditor's collateral that must be provided adequate protection.

## USE OF CASH COLLATERAL SHOULD BE CONDITIONED ON ADDITIONAL ADEQUATE PROTECTION

12. In view of the Debtor's financial history and lack of transparency, the use of cash collateral should be conditioned upon the following terms:

- No payments to insiders or affiliates for management fees.
- Cash collateral shall not be used to pay the Debtor's professional fees.
- The Debtor shall not sell, transfer or lease any of the units without prior written consent of Broadway.

---

[2] Broadway disputes this value. Although cap rates are extremely volatile, based upon the income approach, the property would seem to have a higher value.

{Client\002935\BANK143\00184204.DOC;1}

4

- The Debtor shall provide Broadway with copies of all check registers, bank statements and all internally generated reports.

- All rents shall be deposited into a special cash collateral account.

- Broadway shall be granted a replacement lien on all assets now owned and hereafter acquired by Debtor.

- Broadway should receive monthly debt service in an amount set forth in the loan documents at non-default rates.

13. Broadway respectfully submits that such measures are necessary to protect its interest in the Property and for it to obtain adequate protection of its interest in the cash collateral.

## CONCLUSION

14. For the foregoing reasons, Broadway requests that the Court condition the Debtor's use of Broadway's cash collateral to the extent set forth herein and grant Broadway such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 13, 2009

                                                Tarter Krinsky & Drogin LLP
                                                and
                                                Nesenoff & Miltenberg
                                                Attorneys for Broadway Bank


                                                By:   /S/ Scott S. Markowitz
                                                       Scott S. Markowitz (SSM 0849)
                                                       1350 Broadway
                                                       New York, NY 10018
                                                       (212) 216- 80000

EXHIBIT A

# RELEASE OF PART OF MORTGAGED PREMISES

This Indenture made the 12th day of May 2008, between

GENERAL ELECTRIC CAPITAL CORPORATION, with offices at 280 Park Avenue, 8th Floor, NY, NY 10017 ("Mortgagee")

and

WATER STREET REALTY GROUP LLC., with offices at 71 South Central Avenue, 2ND Floor, Valley Stream, NY 11580 ("Mortgagor")

That the Mortgagee is the holder of the Mortgages detailed below:

Restated Mortgage dated July 25, 2007 in the amount of $22,350,000.00 made by Water Street Realty Group LLC to General Electric Capital Corporation recorded 10/23/2007 in CRFN# 2007000535661 in the Kings County Register's Office.

Mortgage dated July 25, 2007 in the amount of $5,050,000.00 made by Water Street Realty Group LLC to General Electric Capital Corporation recorded 10/23/2007 in CRFN# 2007000535660 in the Kings County Register's Office.

Now, in consideration of the sum of Ten Dollars and other good and valuable consideration, the adequacy and receipt if hereby acknowledged, the Mortgagee does hereby grant and release unto the Mortgagor any lien or interest that the Mortgagee may have under its Mortgages, in and to the following premises:

133 Water Street, Brooklyn NY Unit # 2B, known as Block 28, Lot 1102
133 Water Street, Brooklyn NY Unit # 2D, known as Block 28, Lot 1104
133 Water Street, Brooklyn NY Unit # 3C, known as Block 28, Lot 1109
133 Water Street, Brooklyn NY Unit # 5C, known as Block 28, Lot 1119
133 Water Street, Brooklyn NY Unit # 6C, known as Block 28, Lot 1124
133 Water Street, Brooklyn NY Unit # 7E, known as Block 28, Lot 1131
133 Water Street, Brooklyn NY Unit # 9A, known as Block 28, Lot 1137
133 Water Street, Brooklyn NY Unit # 10D, known as Block 28, Lot 1144

The above units being more particularly described in Schedule A hereto.

The Mortgagee's rights and interest to the same to the extent that the lands hereby released shall discharged from the said Mortgages and the remainder of the lands not so released shall continue to be subject to the lien of the Mortgages.

Dated the 12th day of May, 2008.

GENERAL ELECTRIC CAPITAL CORPORATION
BY: Richard Engel
AUTHORIZED REPRESENTATIVE

STATE OF NEW YORK )
               ) ss.:
COUNTY OF New York )

On _May 12_, 2008, before me, the undersigned, personally appeared _Richard Engel_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

PETER R. BATTEN
Notary Public, State of New York
No. 02BA5055300
Qualified in Richmond County
Commission Expires 2/5/ — 8/31/2010

Covering Premises

133 Water Street, Brooklyn NY Unit # 2B, known as Block 28, Lot 1102
133 Water Street, Brooklyn NY Unit # 2D, known as Block 28, Lot 1104
133 Water Street, Brooklyn NY Unit # 3C, known as Block 28, Lot 1109
133 Water Street, Brooklyn NY Unit # 5C, known as Block 28, Lot 1119
133 Water Street, Brooklyn NY Unit # 6C, known as Block 28, Lot 1124
133 Water Street, Brooklyn NY Unit # 7E, known as Block 28, Lot 1131
133 Water Street, Brooklyn NY Unit # 9A, known as Block 28, Lot 1137
133 Water Street, Brooklyn NY Unit # 10D, known as Block 28, Lot 1144