George E. Patterson, Jr.
WACHTEL & MASYR, LLP
110 East 59th Street
New York, NY 10022
(212) 909-9500
*Attorneys for Plaintiff Northern Funding, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No.: 09-10832 (JMP) |
| WATER STREET REALTY GROUP, LLC, | |
| Debtor. | |

-------------------------------------------------------------x

NORTHERN FUNDING, LLC

      Plaintiff,      Adv. Proc. No.

vs.

                 **COMPLAINT**

GENERAL ELECTRIC CAPITAL
CORPORATION, BROADWAY BANK,
CREATIVE FLOOR MAINTENANCE, INC.,
STARLITE PLUMBING & HEATING CORP.,
CAPONE IRON, CORP., WATER STREET
REALTY GROUP, LLC, and JOHN DOES 1-10,
the names being fictitious and unknown to
Plaintiff, the persons or parties intended being
parties with a mortgage, lien, or security interest
in the property described herein.

      Defendants.
-------------------------------------------------------------x

   Plaintiff Northern Funding, LLC ("Northern Funding"), a creditor of the debtor

Water Street Realty Group, LLC, by its attorneys, Wachtel & Masyr LLP, as for its

Complaint seeking a determination of the validity, priority and extent of various

creditors' liens, pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure,

represents and alleges as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001, *et seq.*, seeking to prove the extent, validity and priority of liens asserted by Plaintiff Northern Funding, LLC ("Northern Funding") in and against certain real property titled in the name of the Debtor.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3. Venue properly lies in this Court pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K) and (O).

## PARTIES

5. Northern Funding is a limited liability company formed under the laws of the state of New York, with offices located at 132 West 31st Street, 13th Floor, New York, NY.

6. The debtor, Water Street Realty Group, LLC (the "Debtor"), is a limited liability company formed under the laws of the State of New York, with offices located at 848 Faile Street, Bronx, New York 10457. Debtor is the owner of a condominium located at 133 Water Street, Brooklyn, New York (the "133 Condominium" or the "Premises").

7. Defendant General Electric Capital Corporation ("GECC") is organized under the laws of the state of Delaware with offices located at 3135 Easton Tpke, Fairfield, CT.

8. Defendant Broadway Bank ("Broadway") is an Illinois banking corporation, having offices at 5960 N. Broadway, Chicago, Illinois.

9. On information and belief, defendant Creative Floor Maintenance, Inc. ("CFM") is organized under the laws of the state of New York, with offices located at 135-27 94th Street, Ozone Park, New York 11417.

10. On information and belief, defendant Starlite Plumbing & Heating Corp. ("SPH") is organized under the laws of the state of New York, with offices located at 1421 63rd Street, Brooklyn, New York 11219.

11. On information and belief, Capone Iron, Corp. ("CIC") is organized under the laws of the state of Massachusetts, with offices at 20 Turcotte Memorial Drive, Rowley Massachusetts.

## PROCEDURAL HISTORY

12. On February 24, 2009 (the "Petition Date"), the Debtor filed a voluntary Petition for relief from its creditors pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§. 101 et. seq. (the "Bankruptcy Code"). Debtor has continued to operate its business and manage its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

13. No trustee, examiner or Official Committee of Unsecured Creditors has been appointed herein.

14. The Debtor's assets consist of the 133 Condominium, including all plant equipment, apparatus, machinery, fixtures, fittings, general intangibles as defined in the Uniform Commercial Code, and appliances, other than those belonging to lessees, affixed

to, attached to, placed upon or used in any way in connection with use, enjoyment, ownership, occupancy, or operation of 133 Condominium (the "Assets").

15. 133 Condominium is comprised of a total of 52 residential condominium units, 1 commercial condominium use unit, and 16 parking spaces.

16. Prior to the Petition Date, Debtor granted mortgages to GECC, Northern Funding and Broadway (collectively, the "Lenders").

17. Prior to the Petition Date, CFM, SPH, and CIC (collectively, the "Mechanics Lienors") each allegedly recorded mechanics liens against 133 Condominium (collectively, the "Mechanics Liens").

18. On or about March 11, 2009, the Debtor made a motion for the use of the Lenders' pre-petition collateral (i.e. rent receipts) on an interim basis up to and including May 22, 2009.

19. On March 24, 2009, this Court entered an Interim Order Authorizing Debtor-in-Possession to Utilize Cash Collateral of the Lenders Set Forth in This Application Nunc Pro Tunc to the Date of Submission Pursuant to 11 U.S.C. §§ 105, 361 and 363 (the "Interim Order"), which, *inter alia*, granted the Lenders and Mechanics Lienors valid, binding, enforceable and automatically perfected lien(s), mortgage(s) and/or security interest(s) in Debtor's property and assets to the same extent, validity and priority that existed pre-petition.

20. On April 14, 2009, this Court entered a Bridge Order Extending the Interim Order Authorizing Debtor-in-Possession to Utilize Cash Collateral of the Lenders

as Set Forth in the Debtor's Application Pursuant to 11 U.S.C. §§ 105, 361, and 363 through May 1, 2009 (the "Bridge Order").

21. On May 7, 2009, this Court entered the Modified Interim Order Authorizing Debtor-in-Possession to Utilize Cash Collateral of the Lenders as Set forth in the Debtor's Application Pursuant to 11 U.S.C. §§ 105, 361, and 363 (the "Final Interim Order") which provided, *inter alia*, that, "[a]ny party in interest shall have until June 15, 2009 to investigate the facts and bring any appropriate proceeding with regard to the Debtor's stipulation as to the validity, perfection, enforceability and priority of any Lenders' claim and liens."

22. Although the Interim Order recites certain facts concerning the creation of the Lenders' and Mechanics Lienors' liens, the Court's findings were made for the purposes of the Interim Order only, and neither it, the Bridge Order, nor the Final Interim Order actually set forth the relative priority of the liens. Further, the Court incorrectly treated Northern's lien as subordinate to both GECC's and Broadway's liens insofar as it awarded GECC and Broadway certain monthly payments to protect their collateral, but awarded no such payments to Northern.

## NORTHERN FUNDING'S LOANS AND MORTGAGES

23. On December 19, 2007, Northern Funding made the following loans to the Debtor and/or one or more of its affiliates, each secured by a mortgage on individual condominium units of 133 Condominium:

    A.    A loan in the principal amount of $467,500.00 evidenced by a note and secured by a mortgage on condominium unit 2B (respectively, "Note A", and "Mortgage A").

5

B. A loan in the principal amount of $484,500.00 evidenced by a note and secured by a mortgage on condominium unit 2D (respectively, "Note B", and "Mortgage B").

C. A loan in the principal amount of $561,000.00 evidenced by a note and secured by a mortgage on condominium unit 6C (respectively, "Note C", and "Mortgage C").

D. A loan in the principal amount of $575,000.00 evidenced by a note and secured by a mortgage on condominium unit 7E (respectively, "Note D", and "Mortgage D").

E. A loan in the principal amount of $612,000.00 evidenced by a note and secured by a mortgage on condominium unit 10D (respectively, "Note E", and "Mortgage E").

24. Mortgages A through E (collectively, "Northern's Mortgages") were duly recorded in the New York City Department of Finance, Office of the City Register (the "City Register") on June 16, 2008.

25. Accordingly, as of June 16, 2008, Northern Funding had fully perfected liens on units 2B, 2D, 6C, 7E, and 10D of the Premises.

26. On October 31, 2008, Northern Funding and Debtor entered into a Spreader Agreement (the "Spreader Agreement") wherein Northern's Mortgages were spread to cover all of the units in the Premises.

27. The Spreader Agreement was duly recorded with the City Register on November 25, 2008.

28. Accordingly, Northern Funding presently has a fully perfected lien on all 52 residential units, the commercial unit, and all 16 parking spaces of 133 Condominium.

## GECC'S LOAN AND MORTGAGES

29. On or about July 25, 2007, GECC made a mortgage loan in the principal amount of $22,350,000 to the Debtor, which was secured by a mortgage on the 53 individual condominium units at the Premises.

30. On information and belief, GECC's mortgage was duly recorded with the City Register on October 23, 2007.

31. On or about June 6, 2008, GECC released its liens on units 2B, 2D, 3C, 5C, 6C, 7E, 9A, 10D of 133 Condominium, which release was, on information and belief, duly recorded with the City Register on June 6, 2008.

## BROADWAY'S LOANS AND MORTGAGES

32. On or about April 1, 2008, Broadway made a mortgage loan to the Debtor in the principal amount of $8,000,000 secured by an interest the 52 individual condominium units at the Premises.

33. On information and belief, Broadway's mortgages were duly recorded with the City Register on May 27, 2008.

34. On information and belief, before it made its mortgage loan and recorded its mortgages, Broadway knew, or should have known about Northern's loans and its mortgages.

35. On information and belief, Broadway Bank was aware while it was in the processes of negotiating its loan to the Debtor that the Debtor was interested in obtaining financing in amounts greater than that supplied by Broadway.

36. On information and belief, at all relevant times, Broadway was aware of GECC's loan and mortgages.

37. Because Broadway was aware that the Debtor was seeking additional financing, and because it was aware of GECC's loan and mortgage, it should have inquired about any additional loans or liens on the Premises.

38. On information and belief, Ron Herscho, the principal of the Debtor, disclosed Northern's loans and mortgages to Broadway.

39. Because Broadway had actual or constructive knowledge of Northern's unrecorded mortgages prior to making its loan and recording its mortgages, Broadway did not make its loan or record its mortgage in good faith and is not entitled to the benefit of having recorded its mortgage before Northern's was recorded pursuant to NY Real Property Law § 291.

40. Accordingly, Broadway's mortgages are subordinate to Northern's mortgages.

## THE MECHANICS LIENS

41. On September 6, 2006, CIC filed with the Clerk of the County of Kings a mechanics lien in the amount of $1,792,180.95 against Block 28, Lot 23 in the County of Kings.

42. On information and belief, as of September 6, 2006, the Premises consisted of lots 23 and 26 of Block 28 in the County of Kings.

43. On information and belief, CIC did not file or serve an extension of its mechanics lien.

44. The mechanics lien filed by CIC is not valid because it was not properly recorded, nor properly renewed pursuant to NY Lien Law § 17.

45. On August 29, 2008, SPH filed with the Clerk of the County of Kings a mechanics lien in the amount of $116,465.20 against Block 28, Lots 23 and 1101 through 1168.

46. SPH's mechanics lien was not properly recorded against the Premises.

47. On December 21, 2007, CFM filed with the Clerk of the County of Kings a mechanics lien in the amount of $140,000.00 against Block 28, Lots 23 and 26 in the County of Kings.

48. On December 12, 2008, CFM filed with the Clerk of the County of Kings an extension of its mechanics lien.

## COUNT ONE
**FIXING THE VALIDITY, PRIORITY AND EXTENT OF NORTHERN'S CLAIM AND/OR LIEN OR OTHER INTEREST IN PROPERTY**

49. Northern Funding repeats the allegations of the previous paragraphs and incorporates them as if set forth at length.

50. Pursuant to § 502 of the Bankruptcy Code, this Court has the authority to determine the validity and amount of creditors claim and interests.

51. Pursuant to § 506 of the Bankruptcy Code, this Court has the authority to determine the secured status, if any, of a claim.

**WHEREFORE**, plaintiff Northern Funding, seeks an Order:

(a) Fixing the validity, priority and extent (amount) of the liens and/or claims set forth herein; and

(b) awarding such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
June 15, 2009

                                                WACHTEL & MASYR, LLP

                                      By: /s/George E. Patterson, Jr.
                                            George E. Patterson, Jr.
                                            110 East 59th Street
                                            New York, New York 10022
                                            (212) 909-9500

                                            *Attorneys for Plaintiff*
                                            *Northern Funding, LLC*